CHRISTOPHER W. DECKER, CA Bar No. 229426
christopher.decker@ogletree.com
MAZEN I. KHATIB, CA Bar No. 306263
mazen.khatib@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
FAIRWAY INDEPENDENT MORTGAGE
CORPORATION

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA VALDEZ, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>FAIRWAY INDEPENDENT MORTGAGE CORPORATION, a Texas corporation; and DOES 1 through 20, inclusive,<br><br>                    Defendants. | Case No.  '18CV2748 CAB KSC<br><br>**DEFENDANT FAIRWAY INDEPENDENT MORTGAGE CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Declaration of Christopher W. Decker In Support of Removal of Civil Action to U.S.D.C.; Declaration of Ariel Kumpinsky In Support of Civil Action to U.S.D.C.; Declaration of Steve Riese In Support of Removal of Civil Action to United States District Court; Declaration of Leonard Krupinski In Support of Defendant Fairway Independent Mortgage Corporation's Removal of Civil Action to U.S.D.C.; Notice of Party with Financial Interest; and Certificate of Service]<br><br>Complaint Filed: October 23, 2018<br>Trial Date:       None |

36467519_5

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, TO PLAINTIFF, AND TO HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant Fairway Independent Mortgage Corporation (hereinafter, "Defendant" or "Fairway"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446. In support of such removal, Defendant states as follows:

**I.    BACKGROUND**

1.    On or about October 23, 2018, Plaintiff commenced this action by filing an unverified Complaint in the Superior Court of California, County of San Diego, captioned Susana Valdez, an individual, on behalf of herself and on behalf of all persons similarly situated, v. Fairway Independent Mortgage Corporation, and DOES I through 20, inclusive, and bearing case number 37-2018-00053677-CU-OE-CTL. (A true and correct copy of this Complaint is attached as "Exhibit A" to this Notice of Removal ("Notice").)

2.    Fairway was served with this action on November 6, 2018. (Proof of Service, a true and correct copy of which is attached hereto as "Exhibit B".)

3.    The Complaint asserts claims for: (1) Failure to Pay Overtime in Violation of Cal. Lab. Code §§ 510, 1194, 1198 and the Applicable IWC Wage Order; (2) Failure to Provide Required Meal Periods in Violation of Cal. Lab. Code §§ 226.7 & 512 and the Applicable IWC Wage Order; (3) Failure to Provide Required Rest Periods in Violation of Cal. Lab. Code §§ 226.7 and the Applicable IWC Wage Order; (4) Failure to Provide Wages When Due in Violation of § Cal. Lab. Code § 201, 202 and 203; (5) Failure to Provide Accurate Itemized Wage Statements in Violation of Cal. Lab. Code § 226; and (6) Unfair Competition in

1

Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

4.    As set out more fully below, based on the allegations of the Complaint and other evidence collected by Fairway, this Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d) and hence the action may be removed by Defendant pursuant to 28 U.S.C. § 1441. Original jurisdiction exists here because there are at least 100 class members in all proposed plaintiff classes, the combined claims of all class members exceed $5,000,000 exclusive of interest and costs, and Fairway is a citizen of a different state than at least one class member.

## II.    DEFENDANT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

### A.    Timeliness

5.    The time to remove under 28 U.S.C. § 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co*., 425 F.3d 689, 694 (9th Cir. 2005). Here, the four corners of the Complaint does not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. The Complaint does not allege the size of any putative class nor does it allege any claim under federal law. Accordingly, as mentioned, it is not possible to ascertain from the Complaint that this case is removable, and, to date, Defendant has not received any other document which would constitute an "other pleading, motion, order or other paper" providing this missing information. (Declaration of Christopher W. Decker ¶ 5.) Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121,

1125 (9th Cir. 2013). As set forth below, Defendant has only recently discovered such evidence after an arduous collection and review of all records of potential class members and a complex analysis of the estimated damages allocated to each cause of action. Therefore, Defendant is timely removing this case based on that discovery.

**B.    Venue**

6.    The Superior Court of California for the County of San Diego is located within the Southern District of California. Therefore, the action is properly removed to this Court pursuant to 28 U.S.C. 84(d) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**C.    Procedural Requirements**

7.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice of Removal.

8.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California in the County of San Diego and with the Clerk of the Southern District of California. True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

**III.    THE CASE IS REMOVABLE PURSUANT TO THE CLASS ACTION FAIRNESS ACT ("CAFA")**

9.    As set forth below, Plaintiff's claims as alleged in the Complaint are removable under 28 U.S.C. § 1332(d).

10.    Under CAFA, the Federal District Court has jurisdiction if:

    (a)    There are at least 100 class members in all proposed plaintiff classes; and

    (b)    The combined claims of all class members exceed $5 million exclusive of interest and costs; and

    (c)    Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B),

3

1453(a).

**A.    There are at least 100 Class Members in all Proposed Plaintiff Classes**

11.    In this action, Plaintiff seeks to represent a class of all persons employed by Defendant in non-exempt positions in California at any time beginning on October 23, 2014 to the date of class certification (Complaint ¶ 19).[1]  Using the present date as the period end date, the class exceeds 100 members, and therefore the requirement of 29 U.S.C. § 1332(d)(5)(B) is satisfied.

12.    Plaintiff's Complaint omits any reference to the number of individuals in the putative class but also asserts that the number class members exceeds the minimum requirements for numerosity under California law. (Complaint ¶ 24.) Based on a review and analysis of Fairway' timekeeping and payroll records, the company has employed 678 individuals in non-exempt positions in California from October 23, 2014 to present.[2]  (Declaration of Ariel Kumpinsky ["Kumpinsky Decl."] ¶ 8.)[3] Thus, the first requirement for CAFA jurisdiction is satisfied.

13.    Based on the above, there are more than 100 class members in all proposed plaintiff classes.

**B.    The Combined Claims of all Class Members Exceed $5 Million Exclusive of Interest and Costs.**

14.    Based on Plaintiff's allegations in the Complaint and other evidence

---

[1] Plaintiff simultaneously seeks to represent a subclass consisting of all persons employed by Defendant in non-exempt positions in California at any time beginning on October 23, 2015 to the date of class certification (Complaint ¶ 20). This sub-class has a technical role. The first cause of action under Bus. & Prof. Code §§ 17200, *et seq.* extends by one additional year the three-year statute of limitations that ordinarily applies to claims under the Labor Code 226.7 and 512.

[2] Specifically, the date November 28, 2018 is used as the "present date."

[3] Mr. Kumpinsky attests to certain calculations performed on employment and payroll data provided by Fairway.  The precise contents of that data set are described in the Declaration of Steve Riese, filed concurrently herewith, and the transmission of that data set to Mr. Kumpinsky is confirmed by the Declaration of Christopher W. Decker, also filed concurrently herewith.

4
DEFENDANT FAIRWAY INDEPENDENT MORTGAGE CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

36467519_5

collected by Fairway, the aggregate value of the claims of all proposed plaintiff classes exceeds the $5 million threshold needed to establish federal jurisdiction under the Class Action Fairness Act. The $5 million jurisdictional minimum may be based on aggregation of the claims of all potential class members. 28 U.S.C. § 1132(d)(6). As is shown below, the evidence shows that Plaintiff's Causes of Action exceed $5 million in controversy.

## 1. Plaintiff's First Cause of Action for Failure to Pay Overtime Places at least $251,765.42 in Controversy.

15.    Plaintiff's First Cause of Action seeks wages for Defendant's alleged failure to pay overtime "because Defendants improperly calculated the overtime rate by failing to include performance bonuses, commissions, other incentive pay and shift differentials in the computation of their regular rate of pay." (Complaint ¶¶ 23, 29, 35-42.)

16.    Plaintiff alleges that, "During the relevant time period, Defendants failed to pay Plaintiff and the class members overtime wages for all overtime hours worked." (Complaint ¶ 39.) Under Labor Code section 510(a), an employee is entitled to compensation at 1.5 times the employee's regular rate of pay for "work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek."

18.    The statute of limitations for a claim seeking wages for failure to pay overtime at the correct rate is three years. Cal. Lab. Code § 203; Cal. Civ. Proc. § 338.  This statute of limitations is extended to four years where, as here, the complaint includes a claim for Unfair Business Practices under Bus. & Prof. Code § 17200. Accordingly, if the allegations of the Complaint are true, Defendant owes additional remuneration to each individual employed in a non-exempt position in California who received a performance bonus, commission, other incentive pay or shift differential and also received compensation for overtime hours.  Defendant

36467519_5

would owe additional remuneration for each such hour from October 23, 2014 to the present.

19.     The Complaint does not allege the number of overtime hours for which additional overtime compensation is due, the amount of the underpayment, or how that amount could be determined, except to say that performance bonuses, commissions, other incentive pay and shift differentials to each employee should have been included in that employee's regular rate of pay.  Based on a review of Defendant's records, the Putative Class Members worked the following regular (i.e. nonovertime), overtime and doubletime hours between October 23, 2014 and the present.

|        | Regular   | Overtime | Doubletime | Total     |
|--------|-----------|----------|------------|-----------|
| **2014** | 9,192.7   | 418.8    | 0          | 9,611.5   |
| **2015** | 96,988.2  | 3,274.1  | 0          | 100,262.3 |
| **2016** | 222,136.5 | 6,700.1  | 0          | 228,836.6 |
| **2017** | 398,158.3 | 6,600.8  | 64.9       | 404,824   |
| **2018** | 582,346.7 | 11,418.3 | 200.5      | 593,965.5 |

(Kumpinsky Decl. ¶ 11).  If Plaintiff's allegations in the Complaint are true, then Fairway owes additional compensation for these overtime and doubletime hours, as performance bonuses, commission, other incentive pay and shift differentials were allegedly not included in the regular rate of pay when computing the applicable overtime premium rate.

20.     Based on a review of Defendant's records, Putative Class Members collectively received the following amounts in bonuses and commissions, between October 23, 2014 and the present.

36467519_5

|  | **Hourly Wages** | **Commissions & Bonuses** | **Total** |
|---|---|---|---|
| **2014** | $153,739.38 | $135,440.64 | $289,180.02 |
| **2015** | $1,521,826.96 | $1,608,888.16 | $3,130,715.12 |
| **2016** | $3,795,279.88 | $4,755,072.64 | $8,550,352.52 |
| **2017** | $7,126,970.63 | $7,112,907.5 | $14,239,878.13 |
| **2018** | $11,194,626.41 | $9,433,437.55 | $20,628,063.96 |

(Kumpinsky Decl. ¶ 12).

21.    For purposes of removal under CAFA, one can estimate with reasonable accuracy the amount to be added to the regular rate of pay due to the payment of bonuses and commissions as follows: 1) Divide the total bonuses and commissions paid to the putative class in a calendar year by the total hours worked by the putative class in that calendar year; 2) Multiply this amount by .5 to calculate the hourly overtime premium attributable to these bonuses and commissions, and double that hourly overtime premium to calculate the hourly doubletime premium attribuable to these bonuses and commissions;[4] 3) Multiply that hourly overtime premium by the overtime hours worked (and the  hourly doubletime premium by the doubletime hours worked) to calculate the unpaid overtime (and doubletime) wages due, as illustrated below:

---

[4] If the ruling of *Alvarado v. Dart Container Corp. of California*, 229 Cal. Rptr. 3d 347 (2018), applies to the bonuses and commissions here, the total bonuses and commissions would be divided only by *nonovertime* hours, and then multiplied by 1.5, resulting in an amount-in-controversy at least three times greater than calculated here. *Id.* at 370.  This Notice of Removal conservatively calculates the overtime payable on the bonus under the formula applicable to production bonuses, piecework bonuses and/or commissions. *See id.* at 365-66; DLSE, The 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (Revised) (April 2017) <*http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf*> at § 49.2.4.

DEFENDANT FAIRWAY INDEPENDENT MORTGAGE CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

|  | Commissions & Bonuses | Total Hours Worked | Add to Regular Rate | OT Premium | DT Premium |
|---|---|---|---|---|---|
| **2014** | $135,440.64 | 9,611.5 | 14.09 | 7.05 | 14.10 |
| **2015** | $1,608,888.16 | 100,262.3 | 16.05 | 8.02 | 16.05 |
| **2016** | $4,755,072.64 | 228,836.6 | 20.78 | 10.39 | 20.78 |
| **2017** | $7,112,907.5 | 404,824 | 17.57 | 8.78 | 17.57 |
| **2018** | $9,433,437.55 | 593,965.5 | 15.88 | 7.94 | 15.88 |

|  | Overtime Hours | OT Premium | Total Allegedly Unpaid OT |
|---|---|---|---|
| **2014** | 418.8 | 7.05 | 2,952.54 |
| **2015** | 3,274.1 | 8.02 | 26,258.28 |
| **2016** | 6,700.1 | 10.39 | 69,614.04 |
| **2017** | 6,600.8 | 8.78 | 57,955.03 |
| **2018** | 11,418.3 | 7.94 | 90,661.30 |
| **TOTAL** |  |  | $247,441.19 |

|  | Doubletime Hours | DT Premium | Total Allegedly Unpaid DT |
|---|---|---|---|
| **2014** | 0 | 14.10 | 0 |
| **2015** | 0 | 16.05 | 0 |
| **2016** | 0 | 20.78 | 0 |
| **2017** | 64.9 | 17.57 | 1,140.29 |
| **2018** | 200.5 | 15.88 | 3,183.94 |
| **TOTAL** |  |  | $4,324.23 |

36467519_5

22.     Hence, based on the above conservative calculations, Plaintiff's first cause of action for failure to pay overtime places at least $251,765.42 ($247,441.19 + $ 4,324.23) in controversy.

## 2.     Plaintiff's Second[5] Cause of Action for Failure to Provide Meal Periods Places at least $1,145,893.72 in Controversy.

23.     Plaintiff's Second Cause of Action seeks premium wages for Fairway's alleged failure to provide meal periods as required by law. (Complaint ¶¶ 30, 43-51.)

24.     Plaintiff alleges that, "During the relevant time period, Plaintiff and class members did not receive compliant meal periods for working more than five (5) and/or ten (10) hours per day because, among other things, Defendants did not provide timely meal periods for shifts over five hours, and Defendants did not provide timely meal periods for shifts over 10 hours." (Complaint ¶ 48.)

25.     Plaintiff also alleges that "Defendants failed to pay Plaintiff and class members the full meal period premium for missed and untimely meal periods pursuant to Labor Code § 226.7(b) and section 11 of the applicable IWC wage order." (Complaint ¶ 50.) As a result, Plaintiff alleges that she and the other class members are entitled to one additional hour of compensation, at each employee's regular rate of pay, for each work-date that a meal was not provided.  (Complaint ¶ 51.)

26.     The statute of limitations for a claim seeking premium wages for failure to provide legally required meal periods and rest breaks is three years. Cal. Lab. Code §§ 203 and 338. This statute of limitations is extended to four years where, as here, the complaint includes a claim for Unfair Business Practices under Bus. &

---

[5] As noted above, the purpose of the sixth cause of action under Bus. & Prof. Code §§ 17200, et seq. is simply to extend the claims under the Labor Code by an additional year; as a result, the claims under the Labor Code are calculated using a four-year prior to filing period, and no separate calculation for the first cause of action is needed.

9

Prof. Code § 17200. Accordingly, if the allegations of the Complaint are true, Fairway owes each individual employed in a non-exempt position in California an additional hour of pay for each work day between October 23, 2014 and the present that such individual either did not receive a meal break prior to their fifth hour of work or did not receive a second meal break on days when employee worked ten hours of work or more. The Complaint does not allege the number of meal periods not provided to Plaintiff or putative class members for which premium pay is due. However, where a class action complaint alleging failure to provide meal periods (and/or rest breaks) does not provide this detail, the Court should assume for purposes of calculating the amount in controversy that each putative class member is entitled to premium pay for at least one meal period per week worked. See, e.g., *Quintana v. Claire's Stores, Inc*., 2013 WL 1736671 at \*6 (N.D. Cal.); *Jasso v. Money Market Express, Inc*., 2012 WL 699465 (ND. Cal.).

27.    The Complaint does not allege the number of weeks worked by Putative Class Members between October 23, 2014 to the present.  However, this number can be estimated with reasonable accuracy from Fairway's business records.  Based on those records, Putative Class Members collectively worked the following regular (i.e. nonovertime) hours in each calendar year between October 23, 2014 to the present.

|          | Regular Hours |
|----------|---------------|
| **2014** | 9,192.7       |
| **2015** | 96,988.2      |
| **2016** | 222,136.5     |
| **2017** | 398,158.3     |
| **2018** | 582,346.7     |

(Kumpinsky Decl. ¶ 11.)

36467519_5

28.    Assuming, conservatively, that all Putative Class Members were full-time employees who always worked at least eight hours on each workday, one can derive the minimum number of days worked by Putative Class Members by dividing these amounts by eight.  One missed meal period per week equates to one missed meal period for every five days worked or 40 regular hours worked.  Accordingly, for purposes of calculating the amount in controversy, this Court should assume one missed meal period for every 40 regular hours worked by Putative Class Members, which yields the following numbers of such violations.

|  | Regular Hours | Meal Period Violations |
|---|---|---|
| **2014** | 9,192.7 | 229.81 |
| **2015** | 96,988.2 | 2,424.71 |
| **2016** | 222,136.5 | 5,553.41 |
| **2017** | 398,158.3 | 9,953.96 |
| **2018** | 582,346.7 | 14,558.67 |

29.    The premium wage due for each such meal period violation would be an additional hour of compensation at the employee's regular rate of compensation. While the matter has not been definitively resolved, some courts have held that the phrase "regular rate of compensation" in Labor Code Section 226.7 is equivalent to "regular  rate of pay" and therefore includes both hourly rates and any other amounts (such as bonuses and commissions) which must be included in the regular rate of pay as a matter of law.  *See Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL 2146380, at *6 (C.D. Cal. May 8, 2018); *Studley v. All. Healthcare Servs., Inc.*, 2012 WL 12286522, at *4 (C.D. Cal. July 26, 2012).

30.    To estimate the regular rate of compensation due for each meal period

36467519_5

violation on a class-wide basis, one can divide the total compensation paid to Putative Class Members by the total hours worked by Putative Class Members, yielding the following results:

| | Total Hours Worked | Total Wages Paid | Average Regular Rate |
|---|---|---|---|
| **2014** | 9,611.5 | $289,180.02 | 30.09 |
| **2015** | 100,262.3 | $3,130,715.12 | 31.23 |
| **2016** | 228,836.6 | $8,550,352.52 | 37.36 |
| **2017** | 404,824 | $14,239,878.13 | 35.18 |
| **2018** | 593,965.5 | $20,628,063.96 | 34.73 |

31.    Multiplying the average regular rate of compensation by the number of meal period violations yields the amount placed in controversy by Plaintiff's cause of action for failure to provide meal periods, as follows:

| | Meal Period Violations | Average Regular Rate | Allegedly Unpaid Meal Period Premiums |
|---|---|---|---|
| **2014** | 229.81 | 30.09 | 6,914.98 |
| **2015** | 2,424.71 | 31.23 | 75,723.69 |
| **2016** | 5,553.41 | 37.36 | 207,475.40 |
| **2017** | 9,953.96 | 35.18 | 350,180.31 |
| **2018** | 14,558.67 | 34.73 | 505,599.34 |
| **TOTAL** | | | $1,145,893.72 |

32.    Thus, Plaintiffs Second Cause of Action places at least $1,145,893.72 in controversy.

### 3.    Plaintiff's Third Cause of Action for Failure to Provide Rest Periods Places at least $1,145,893.72 in Controversy.

33.    Plaintiff's Third Cause of Action seeks premium wages for Fairway's alleged failure to provide rest breaks as required by law. (Complaint ¶¶ 31, 52-58.)

34.    Plaintiff alleges that Defendant failed to provide employees the legally required rest periods for every four hours worked. Plaintiff alleges that the class members did not receive their first rest period of at least ten minutes for every four hours or "major fraction thereof worked because they were required to work through their daily rest periods and/or were not authorized to work their rest periods." (Complaint ¶ 55.) Plaintiff further alleges that the class members are entitled to one hour of premium pay for each day in which a rest period was not provided. (Complaint ¶ 56-57.)

35.    The statute of limitations for a claim seeking premium wages for failure to provide legally required meal periods and rest breaks is three years. Cal. Lab. Code §§ 203 and 338. This statute of limitations is extended to four years where, as here, the complaint includes a claim for Unfair Business Practices under California Business and Professions Code section 17200. Accordingly, if the allegations of the Complaint are true, Fairway owes each individual employed in a non-exempt position in California an additional hour of pay for each work day between October 23, 2014 and the present that such individual worked in excess of 3.5 hours. The Complaint does not allege the number of rest breaks not provided to Plaintiff or putative class members for which premium pay is due. However, where a class action complaint alleging failure to provide meal periods and/or rest breaks does not provide this detail, the Court should assume for purposes of calculating the amount in controversy that each putative class member is entitled to premium pay for at least one meal period and one rest break per week worked. See, e.g., *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671 at *6 (N.D. Cal.); *Jasso v. Money Market Express, Inc.*, 2012 WL 699465 (N.D. Cal.).

13

36.    The Complaint does not allege the number of weeks worked by Putative Class Members between October 23, 2014 to the present.  However, this number can be estimated with reasonable accuracy from Fairway's business records.  Based on those records, Putative Class Members collectively worked the following regular (i.e. nonovertime) hours in each calendar year between October 23, 2014 to the present.

|      | Regular Hours |
|------|---------------|
| 2014 | 9,192.7       |
| 2015 | 96,988.2      |
| 2016 | 222,136.5     |
| 2017 | 398,158.3     |
| 2018 | 582,346.7     |

(Kumpinsky Decl. ¶ 11.)

37.    Assuming, conservatively, that all Putative Class Members were full-time employees who always worked at least eight hours on each workday, one can derive the minimum number of days worked by dividing these amounts by eight. One missed rest break per week equates to one missed rest break for every five days worked or 40 regular hours worked.  Accordingly, for purposes of calculating the amount in controversy, this Court should assume one missed rest break for every 40 regular  hours worked by Putative Class Members, which yields the following numbers of such violations.

|      | Regular Hours | Rest Break Violations |
|------|---------------|------------------------|
| 2014 | 9,192.7       | 229.81                 |
| 2015 | 96,988.2      | 2,424.71               |
| 2016 | 222,136.5     | 5,553.41               |

36467519_5

| | | |
|---|---|---|
| **2017** | 398,158.3 | 9,953.96 |
| **2018** | 582,346.7 | 14,558.67 |

38.     The premium wage due for each such rest break violations would be an additional hour of compensation at the employee's regular rate of compensation. While the matter has not been definitively resolved, some courts have held that the phrase "regual rate of compensation" in Labor Code Section 226.7 is equivalent to "regular  rate of pay" and therefore includes both hourly rates and any other amounts (such as bonuses and commissions) which must be included in the regular rate of pay as a matter of law.  *See Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL 2146380, at *6 (C.D. Cal. May 8, 2018); *Studley v. All. Healthcare Servs., Inc.*, 2012 WL 12286522, at *4 (C.D. Cal. July 26, 2012).

39.     To estimate the regular rate of compensation due for each rest break violation on a class-wide basis, one can divide the total compensation paid to Putative Class Members by the total hours worked by Putative Class Members, yielding the following results:

| | **Total Hours Worked** | **Total Wages Paid** | **Average Regular Rate** |
|---|---|---|---|
| **2014** | 9,611.5 | $289,180.02 | 30.09 |
| **2015** | 100,262.3 | $3,130,715.12 | 31.23 |
| **2016** | 228,836.6 | $8,550,352.52 | 37.36 |
| **2017** | 404,824 | $14,239,878.13 | 35.18 |
| **2018** | 593,965.5 | $20,628,063.96 | 34.73 |

40.     Multiplying the average regular rate of compensation by the number of rest break violations yields the amount placed in controversy by Plaintiff's cause of

15

action for failure to provide rest breaks, as follows:

|  | Rest Break Violations | Average Regular Rate | Allegedly Unpaid Rest Break Premiums |
|---|---|---|---|
| **2014** | 229.81 | 30.09 | 6,914.98 |
| **2015** | 2,424.71 | 31.23 | 75,723.69 |
| **2016** | 5,553.41 | 37.36 | 207,475.40 |
| **2017** | 9,953.96 | 35.18 | 350,180.31 |
| **2018** | 14,558.67 | 34.73 | 505,599.34 |
| **TOTAL** | | | $1,145,893.72 |

41.    Thus, Plaintiff's Third Cause of Action places at least $1,145,893.72 in controversy.

**4.    Plaintiff's Fourth Cause of Action Places at least $1,246,586.11 in Controversy.**

42.    Plaintiff's Fourth Cause of Action seeks penalties under California Labor Code section 203 for failure to timely pay wages due at termination. (Complaint ¶¶ 59-64.) Section 203 provides that, if an employer willfully fails to pay all wages due at termination, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days continuation wages.

43.    As noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member experienced one meal period violation and one rest period violation per week. On that reasonable assumption, each putative class member would be owed at least one meal period premium and one rest break premium for each week worked. Hence, each putative class member who terminated did not receive all wages due to him or her at the time

of termination, and any putative class member member whose employment terminated more than 30 days ago is entitled to 30 days' continuation wages as a penalty under Labor Code section 203.

44.    The applicable statute of limitations for a claim under Labor Code section 203 is three years. Cal. Lab. Code §§ 203 and 338. If the allegations of the Complaint and Plaintiff's legal theories are correct, Fairway owes the maximum 30 days of continuation wages to each and every individual employed in a non-exempt position in California who terminated employment between October 23, 2015 and the present. Review of Fairway's employment records reveals that there are at least 345 such individuals.  (Kumpinksy Decl. ¶ 8.)  If the allegations of the Complaint and Plaintiff's legal theories are correct, Fairway owes thirty (30) days of continuation wages for a full-time hourly employee at the employee's final wage rate. Multiplying each of these terminated employees' final hourly rate of pay by 240 hours (30 days * 8 hours/day) yields $1,246,586.11.  (Kumpinsky Decl. ¶ 9).  This amount  represents a conservative estimate, as it includes only the employee's base hourly pay, and not any bonus or commission wages.

45.    Thus, Plaintiff's claim for waiting time penalties under the Fourth Cause of Action place at least $1,246,586.11 in controversy.

### 5.    Plaintiff's Fifth Cause of Action Places at least $909,000  in Controversy.

46.    Plaintiff's Fifth Cause of Action seeks penalties under California Labor Code section 226(e) for failure to provide accurate itemized wage statements. (Complaint ¶¶ 65-71.) The applicable penalty is fifty dollars for the initial pay period in which a violation occurs, and one hundred dollars for each violation in a subsequent pay period, up to a maximum aggregate penalty of four thousand dollars. Cal. Lab. Code § 226(e). Plaintiff alleges that Defendant violated Cal. Lab. Code § 226(e) by not accurately stating "the gross and net wages earned, total hours worked, and all applicable hourly rates in effect and the number of hours worked at each

hourly rate by Plaintiff and class members." (Complaint ¶ 67.)

47.     As noted above, for purposes of calculating the amount-in-controversy, this Court can and should assume that each putative class member experienced one meal period violation and one rest period violation per week.  On that reasonable assumption, each putative class member would be owed at least one meal period premium and one rest break premium for each week worked. As these premium wages were not paid to them, they did not appear on the wage statement issued to them, and – if Plaintiff's allegations and legal theories are correct – the wage statement did not accurately state all gross and net wages earned.  Hence, each wage statement issued to putative class members was inaccurate, as it did not include the weekly meal and rest period premium wages which, according to Plaintiff, were due to putative class members but not paid.

48.     The Labor Code provides for a penalty of $50.00 for the initial pay period in which a violation of Labor Code § 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of $4,000.00 per class member. Labor Code § 226(e).

49.     The applicable statute of limitations to recover penalties under California Labor Code section 226(e) is one year. Cal. Civ. Pr. Code § 340(a). Accordingly, if the allegations of the Complaint and Plaintiff's legal theories are correct, any individual employed by Fairway in a non-exempt position in California on or after October 23, 2017 through present is entitled to penalties under Labor Code section 226(e) for each wage statement issued during that time period. Based on review of Defendant's timekeeping and payroll records, the company has employed 546 non-exempt individuals in California during that time and has issued 9,363 wage statements to them (Kumpinsky Decl. ¶ 10.)

50.     Accordingly, given the inputs above, Plaintiff and the other class members would be entitled to recover at least the following: [546 (initial wage statements) * $50] + [8,817 (subsequent wage statements) * $100] = $909,000.

18

51.   Thus, Plaintiff's Fifth Cause of Action places at least $909,000 in controversy.

### 6.   Plaintiff's Prayer for Attorneys' Fees Places an Additional $1,174,784.74 in Controversy.

34.   Plaintiff seeks attorneys' fees on behalf of the putative class. (Complaint, Prayer for Relief).  Attorneys' fees are properly included in the amount in controversy.  *See, Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may properly be included in calculation of the amount of controversy where an underlying statute authorizes an award of attorneys' fees).

35.   In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%).  Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy.  *See, e.g., Giannini v. Northwestern Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendant's "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *6-7 (N.D. Cal. Mar. 1, 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and

19

36467519_5

noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'") (citation omitted).

36.    Additionally, the Ninth Circuit has recently confirmed that future attorneys' fees must be included in an amount in controversy calculation under CAFA. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 2018 U.S. App. LEXIS 22036, *17 (9th Cir. 2018).  Accordingly, assuming the low-end 25% figure reflected in the case law, a reasonable and conservative assumption for purposes of establishing the amount-in-controversy, attorneys' fees in this matter would amount to at least 25% of the unpaid wages and penalties sought, which, as detailed above, amount to $4,699,138.97 [$251,765.42 + $1,145,893.72 + $1,145,893.72 + $909,000 + $1,246,586.11  = $4,699,138.97].  Plaintiff's prayer for attorney's fees therefore adds at least $1,174,784.74 (25% of $4,699,138.97) to the amount-in-controversy. This brings the total amount-in-controversy to $5,873,923.71 ($4,699,138.97 + 1,174,784.74), exceeding the $5 million threshold needed to establish federal jurisdiction under the Class Action Fairness Act.[6]

## C.    Any Class Member Is A Citizen Of A Different State Than Any Defendant

52.    For purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and the named Defendant, Fairway. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

A.    Plaintiff is a citizen of California.

53.    Plaintiff alleges that she is a citizen of California. (Complaint ¶ 10.)

B.    Defendant is a citizen of Wisconsin or Texas.

54.    Defendant was at the time of the filing of this action, and still is, a

---

[6] Should the Court or opposing counsel request additional information, evidence and/or calculations to demonstrate that this Action places at least $5m in controversy, Defendant reserves the right to refine the methodologies used here and calculate the amount-in-controversy with greater precision, which may significantly increase the result.

corporation formed under the laws of Texas. (Declaration of Leonard Krupinksi ["Krupinksi Decl."] ¶ 3.)

55.    Pursuant to 28 United States Code § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *Hertz Corporation v. Friend*, 130 S.Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination." *Id*.

56.    Fairway's principal place of business and the location that its directors direct, control, and coordinate its corporate activities is Wisconsin or Texas. (Krupinksi Decl. ¶P 3-5.)

57.    Therefore, at all material times, Defendant has been a citizen of the State of Wisconsin or Texas, and not of the State of California.

58.    There are no other named Defendants in this action. Accordingly, there is no requirement for anyone else to join in this removal. The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal based on diversity jurisdiction. 28 U.S.C. §1441(a).

59.    Since Plaintiff and Defendant are citizens of different states, the third requirement of CAFA jurisdiction is satisfied. Moreover, because Defendant is not a citizen of California, the exceptions to CAFA jurisdiction under 28 U.S.C.§ 1332(d)(3) and (d)(4) are inapplicable.

36467519_5

## IV. <u>REMOVAL IS PROPER BECAUSE THIS COURT HAS SUPPLEMENTAL MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1367</u>

60.    As set forth above, this action is removable under 28 U.S.C. § 1332(d).

61.    To the extent this Court would not otherwise have jurisdiction over any claim asserted in the Complaint, it may exercise supplemental jurisdiction over such a claim pursuant to 28 U.S.C. § 1367.

## V. <u>CONCLUSION</u>

62.    This Court, therefore, has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

63.    In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that it issue an Order to Show Cause so that it may have the opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes this action to this Court.

DATED: December 6, 2018                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Christopher W. Decker
       Christopher W. Decker
       Mazen I. Khatib

Attorneys for Defendant
FAIRWAY INDEPENDENT MORTGAGE CORPORATION

36467519.5

36467519_5