UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA VALDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FAIRWAY INDEPENDENT MORTGAGE CORPORATION,<br><br>Defendant. | Case No.: 18-cv-2748-CAB-KSC<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>[Doc. No. 16] |

This matter is before the Court on Plaintiff's motion to remand. [Doc. No. 16.] The motion has been fully briefed and the Court deems it suitable for submission without oral argument. For the reasons set forth below, the Court finds that Defendant has not satisfied its burden to demonstrate that the amount in controversy exceeds $5 million by a preponderance of the evidence, meaning that this Court does not have subject matter jurisdiction. Accordingly, the motion to remand is granted.

## I. BACKGROUND

Plaintiff Susana Valdez is a former employee of Defendant Fairway Independent Mortgage Corporation. On October 23, 2018, Plaintiff filed a complaint in San Diego County Superior Court asserting claims on behalf of herself and putative classes of all non-

exempt current and former employees of Defendant. The complaint asserts six claims under California's labor and unfair competition laws and is silent as to the amount of damages. [Doc. No. 1-2.[1]]

On December 6, 2018, Defendant removed the case to this Court. [Doc. No. 1.] In the notice of removal, Defendant asserts that all of the requirements for subject matter jurisdiction under the Class Action Fairness Act ("CAFA") are met insofar as minimum diversity exists and the amount in controversy exceeds $5 million. The notice includes calculations for the amount in controversy for each of Plaintiff's claims and the underlying assumptions for those calculations. The notice of removal alleged the amount in controversy is $5,873,923.71.

On June 14, 2019, Plaintiff moved to remand the case to state court. [Doc. No. 16.] Plaintiff primarily avers that Defendant inflated the underlying numbers, used numbers without evidentiary support, assumed improper violation rates, and allocated fees to claims for which fees are not recoverable. Defendant filed its opposition [Doc. No. 17], and Plaintiff filed a reply. [Doc. No. 18.]

**II.    LEGAL STANDARD**

A suit filed in state court may be removed to federal court by the defendant or defendants if the federal court would have had original subject matter jurisdiction over that suit. 28 U.S.C. § 1441(a); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977-78 (9th Cir. 2013). Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity between the parties, *see* 28 U.S.C. § 1332. Here, however, Defendant argues solely that this Court has jurisdiction based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d). Pursuant to CAFA, federal district courts have original subject matter jurisdiction over class actions in which a member of the plaintiff class is a citizen of a state different from any defendant and the

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). "Section 1332(d) thus abandons the complete diversity rule for covered class actions." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006). However, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Id.* at 685.

"A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez*, 728 F.3d at 981. Usually, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). However, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Mannheim*, 775 F.3d 1193, 1197 (9th Cir. 2015). Thus, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

To remove a case pursuant to CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* "But evidence establishing the amount is required where, as here, defendant's assertion of the amount in controversy is contested by plaintiffs. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra*, 775 F.3d at 1197 (citations and internal quotation marks omitted). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *See Ibarra*, 775

F.3d at 1199.

## III. DISCUSSION

There is no dispute that the number of putative class members exceeds the minimum required for CAFA jurisdiction or that the diversity requirements are met. The only dispute concerns the amount in controversy and whether Defendant's calculations and underlying assumptions are reasonable and grounded in real evidence. The complaint is silent as to the amount in controversy. Defendant estimated the amount in controversy is $5,873,923.71 in its notice of removal and at least $5,590,538.94 in its opposition to the motion to remand. In its notice of removal, Defendant submits the declarations of Ariel Kumpinsky[2], Steve Riese[3], and Leonard Krupinski.[4] In its opposition to the motion to remand, Defendant submits a supplemental declaration of Ariel Kumpinsky and a declaration from Defendant's counsel stating Plaintiff's counsel's calculations of potential damages made at mediation.[5] In the motion to remand, Plaintiff estimated the amount in controversy is at most $3,760,000. Plaintiff acknowledges in her motion that her calculations are only different from Defendant with respect to the calculations for overtime, meal periods and rest breaks, and attorney's fees. Each of these is addressed below.

### A. Overtime Claim

The complaint alleges that during the relevant time period, Defendant "failed to pay Plaintiff and class members overtime wages for all overtime hours worked." [Doc. No. 1-2 at ¶ 39.] Plaintiff further alleges that Defendant failed to "include in Plaintiff and class members' overtime rate the amount that they earned in performance bonuses, commissions, other incentive pay and shift differentials, among other things." [*Id*. at ¶ 40.]

---

[2] Senior manager at The Claro Group, LLC, a consulting firm. [Doc. No. 1-5.]
[3] Assistant Vice President, HR Operations for Defendant. [Doc. No. 1-6.]
[4] Chief Operating Officer for Defendant. [Doc. No. 1-7.]
[5] Plaintiff countered that should the Court consider such evidence it should likewise consider Plaintiff's counsel's declaration stating Defendant's counsel's statements of damages made at mediation, effectively negating each side's mediation statements in the Court's view.

Based on a review of Defendant's records, Defendant determined the regular, overtime, and doubletime hours worked by the putative class members during the relevant time period as well as amounts received in bonuses and commissions. [Doc. No. 1 at ¶¶ 19-20.] Using these figures, Defendant then estimated the amount to be added to the regular rate of pay due to the payment of bonuses and commissions, resulting in at least $251,765.42 in controversy for the overtime claim. [*Id*. at ¶¶ 21-22.]

Plaintiff contends Defendant calculated the overtime amount using uncorroborated numbers and unreasonable assumptions because Defendant included discretionary bonuses to determine overtime compensation, offered no evidence that bonuses and commissions were earned during the same pay periods that overtime hours were worked, and unreasonably assumed a 100% violation rate. [Doc. No. 16-1 at 10-12.] Plaintiff states Defendant's assumption of a 100% violation rate was improper because it contradicted the allegations in the complaint and there is no evidence supporting Defendant's assumption. [*Id*. at 11.] Defendant admits to relying on the following assumptions in its estimate of the overtime calculation, which in its opinion were reasonable: "Defendant assumed that bonuses/commissions were earned evenly over time, and that overtime hours were similarly worked evenly over time" [Doc. No. 17 at 13]; "Defendant therefore reasonably assumed that Plaintiff is alleging a systematic failure to include 'performance bonuses, commissions, other incentive pay and shift differentials' in the calculation of the regular rate of pay, and calculated the overtime wages that would have been paid had all such items of compensation been included." [*Id*. at 14.]

The most consequential assumption relied on by Defendant is the 100% violation rate which Defendant denies making. Defendant asserts that nothing in the complaint suggests that Defendant's alleged failure to pay overtime was occasional or intermittent, only during certain time periods, only to certain employees, or only to certain items of compensation. [*Id*.] Thus, Defendant states it reasonably assumed that Plaintiff is alleging a *systematic* failure and did not make *any* assumption as to the frequency of overtime violations. [*Id*.] The Court is not persuaded by Defendant's characterization.

The Court looks first to the allegations in the Complaint to establish the appropriate violation rate. *See Ibarra*, 775 F.3d at 1197 ("In determining the amount in controversy, courts first look to the complaint."); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint"). Defendant, then, "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Id.* at 1199. "[A] 'pattern and practice' of doing something does not necessarily mean always doing something." *Id.* at 1198-99. Likewise, a uniform or systematic violation does not necessarily mean that a violation manifested at every possible occurrence. When considering allegations of a defendant's uniform policy, assumptions made without substantiation are "arbitrary and little more than speculation and conjecture." *Sanders v. Old Dominion Freight Line, Inc.*, No. 16-CV-2837-CAB-NLS, 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) (noting that "without evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture."); *see also Cummings v. G6 Hosp., Ltd. Liab. Co.*, No. 19-CV-00122-GPC-LL, 2019 WL 1455800, at *4 (S.D. Cal. Apr. 2, 2019) (finding that "[d]efendants have not provided reliable evidentiary bases for [their] assumption" that a 100% violation rate is reasonable in light of the plaintiff's allegations of a uniform policy); *Vilitchai v. Ametek Programmable Power, Inc.*, No. 3:15cv1957-L(BLM), 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017) ("Ametek assumes that each putative class member employed . . . worked one hour of unpaid overtime per week. It provides no support for this assumption. Because the assumption is 'pulled from thin air,' it is insufficient to support Ametek's amount in controversy calculation.") (quoting *Ibarra*, 775 F.3d at 1199).

The Court is not convinced that even if Plaintiff is alleging a systematic failure to pay overtime, it would be reasonable to apply a 100% violation rate without any basis grounded in real evidence as noted above. Upon review of the pleadings and evidence submitted it appears Defendant's assumptions are pulled from thin air and insufficient to support its calculation. Defendant provides no evidence to support its use of a 100%

violation rate nor does it provide any evidence to reasonably assume that bonuses and commissions were earned evenly during the relevant period, and that overtime hours were similarly worked evenly during the relevant period. While the submitted declaration of Ariel Kumpinsky includes useful data regarding the number of non-exempt employees, the number of such employees who have terminated their employment, the hours worked by these employees, and the wages paid to these employees, Defendant does not provide how this data can be used to support the previously stated assumptions when it appears such information is readily available. *See Davis v. Barney's Inc*., No. CV 18-6627-JFW(SKx), 2018 WL 4940801, at *2 (C.D. Cal. Oct. 11, 2018) ("There is no basis to conclude that [defendant's assumptions] are accurate. This sort of guesswork is particularly egregious because [d]efendant . . . has ready access to all the facts [and] records . . . necessary to support its . . . calculations."); *Amirian v. Umpqua Bank*, No. CV 17-7574 FMO (FFMx), 2018 WL 3655666, at *4 (C.D. Cal. July 31, 2018) ("Although defendant does not have the burden of proving its ultimate liability, it must provide evidence of the amount in controversy, which defendant has not done here.") Similar to *Sanders*, "[b]ecause use of either a 25% or 50% violation rate would at a minimum be equally reasonable (or equally unreasonable), it is impossible for the Court to decide that [the defendant] has satisfied its burden." *Sanders*, 2017 WL 5973566 at *4.

As Plaintiff notes, also assuming arbitrarily, even a 50% violation rate with Defendant's calculations would result in $125,882.71 in controversy for the overtime claim. The allegation that Plaintiff and the putative class were not paid for "all" overtime is not the same as an allegation that Plaintiff and the putative class were not paid for "any" overtime, which is what Defendant assumes in its calculation instead of using its records to determine when overtime compensation was paid and adjusting accordingly. Defendant thereby used its calculations as if there was a 100% violation rate. Plaintiff's allegations support the inference that she and members of the putative class received some, but not all, of overtime owed. As such, application of a 100% violation rate is unwarranted and speculative. Accordingly, the Court finds that Defendant has not satisfied its burden to

demonstrate, by a preponderance of the evidence, that the amount in controversy for the overtime claim is $251,765.42.

### B. Meal Periods and Rest Breaks Claims

The complaint alleges that "Plaintiff and class members did not receive compliant meal periods for working more than five (5) and/or ten (10) hours per day because" Defendant did not provide timely meal periods for shifts over five hours, and Defendant did not provide a second meal period for shifts over ten hours. [Doc. No. 1-2 at ¶ 48.] The complaint also states that "Plaintiff and class members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked because they were required to work through their daily rest periods and/or were not authorized to take their rest periods." [*Id*. at ¶ 55.]

Defendant notes that the complaint does not allege the number of meal periods or rest breaks not provided to Plaintiff or putative class members, and therefore the Court should assume each member is entitled to pay for at least one meal period and one rest break per week worked. [Doc. No. 1 at ¶¶ 26, 35.] Furthermore, Defendant states that some courts have held that the phrase "regular rate of compensation" in California Labor Code § 226.7 is equivalent to "regular rate of pay" and therefore includes both hourly rates and any other amounts (such as bonuses and commissions). Thus, to estimate the regular rate of compensation Defendant applied the regular rate of pay and divided the total compensation paid by the total hours worked, to arrive at an amount in controversy of $1,145,893.72 for each of the meal period and rest break violation claims, totaling $2,291,787.44.

Plaintiff contends Defendant conflated "regular rate of compensation" with "regular rate of pay" used for determining overtime rate of pay and factored in bonuses and commissions which resulted in rates significantly higher than the hourly rate of pay. [Doc. No. 16-1 at 12.] Conversely, Plaintiff relied on the numbers provided by Defendant to determine the regular rate of compensation which resulted in an amount in controversy of $492,444.428 for each of the meal period and rest break violation claims, totaling

$984,888.856.

For each workday on which an employer fails to provide meal or rest periods, California Labor Code § 226.7 requires the employer to pay the employee "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." *See* Cal. Labor Code § 226.7(c). Compared to the "regular rate of compensation", the "regular rate of pay" considers compensation beyond the normal hourly rate, including commissions and non-discretionary bonuses. *See* Cal. Labor Code § 510(a).

The Court does not agree with the reasoning behind cases Defendant relies on that find the two terms interchangeable, as those cases either narrowly construed such a finding to the specific circumstances of that case or rejected the difference in language without explanation. *See Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASx), 2018 WL 2146380, at *3 (C.D. Cal. May 8, 2018) ("The Court disagrees with Brum, Bradescu, and Wert to the extent they are inconsistent with this conclusion, although none of those cases addressed a compensation system comparable to Defendant's."); *see also Magadia v. Wal-Mart Associates*, No. 17-CV-00062-LHK, 2019 WL 2317181, at *10 (N.D. Cal. May 31, 2019) (quoting *Ibarra*, 2018 WL 2146380, at *3).

The Court is more persuaded by the reasoning behind the cases acknowledging the distinction between the two terms and Plaintiff's assertion that the overwhelming weight of authority supports the position that "regular rate of compensation" is not synonymous with "regular rate of pay." *See Wert v. U.S. Bancorp*, No. 13–cv–3130–BAS (BLM), 2014 WL 7330891 at *3-5 (S.D. Cal. Dec. 18, 2014) ("[The] distinctions in the use of particular language . . . lead this Court to the conclusion that the phrases "regular rate of compensation" and "regular rate of pay" are not synonymous and should not be used interchangeably."); *Frausto v. Bank of Am.*, No. 18-cv-01983-MEJ, 2018 WL 3659251, at *5 (N.D. Cal. Aug. 2, 2018) (noting that the California Supreme Court recognized that "the section 226.7 payment[ ] uses the employee's rate of compensation", and not the employee's "regular rate" used for overtime purposes. (citing *Murphy v. Kenneth Cole*

*Products, Inc.*, 40 Cal. 4th 1094, 1113 (2007)); *Brum v. MarketSource, Inc.*, No. 2:17–cv–241–JAM–EFB, 2017 WL 2633414, at *5 (E.D. Cal. June 19, 2017) ("[I]f the legislature carefully employs a term in one statute and deletes it from another, it must be presumed to have acted deliberately.").

Having considered both positions, the Court agrees with Plaintiff's assertion that "regular rate of compensation" is not equivalent to "regular rate of pay" and likewise finds the legislature's distinction of the two terms significant. Moreover, similar to the analysis above for the overtime claim, Defendant again arbitrarily assumed a violation rate of one missed meal break and one missed rest break per week, effectively a 20% violation rate, that is not grounded in any real evidence. *See Armstrong v. Ruan Transp. Corp.*, No. EDCV 16-1143-VAP (SPx), 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25, 2016) (noting that because "defendant 'provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week,' the Court finds [defendant] has failed to sustain its evidentiary burden for purposes of removal."). Accordingly, the Court finds that Defendant has not satisfied its burden to demonstrate, by a preponderance of the evidence, that the amount in controversy for the meal period and rest break violation claims is $2,291,787.44.

### C. Attorney's Fees

Defendant also contends that "Plaintiff's prayer for attorney's fees places an additional $1,118,107.79 in controversy, calculated by applying the 25% benchmark for attorneys' fees awards in wage and hour class actions to the sum of the amounts conservatively estimated." [Doc. No. 17 at 21.]

"Defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 796 (9th Cir. 2018). Moreover, a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place. *See Winterrowd v. Am. Gen. Annuity*

10

18-cv-2748-CAB-KSC

*Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009). A state may adopt the lodestar method for determining reasonable attorneys' fees under certain statutes, *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001), or (as in this case) not allow recovery of attorneys' fees for legal work on certain types of claims, *see Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012) (stating that the attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims).

As Plaintiff notes, Defendant attempts to multiply its calculations for all of Plaintiff's claims by 25% to determine attorney's fees while courts have held that fees are not recoverable for claims of meal period, rest break, and waiting time violations. *See Kirby*, 53 Cal. 4th at 1255; *see also Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1260-1261 (2016). The Court need not reach this issue because even if the Court applied Defendant's use of the 25% benchmark to all of Plaintiff's claims Defendant has failed to satisfy its burden to prove by a preponderance of evidence that the amount placed in controversy on the complaint excluding attorney's fees is $4 million. *See Armstrong*, 2016 WL 6267931 at *7 ("While courts in the Ninth Circuit have considered potential attorneys' fees in calculating the amount in controversy in wage-and-hour cases, Defendant's fee estimate is based on a conjectural damages calculation and should be disregarded.") (citing *Campbell v. Vitran Express, Inc.*, No. CV-10-04442-RGK(SHx), 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.")).

11

18-cv-2748-CAB-KSC

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's motion to remand is **GRANTED**, and Plaintiff's evidentiary objections are **DENIED as moot**. This case is **REMANDED** to the Superior Court of the State of California for the County of San Diego.

It is **SO ORDERED**.

Dated: July 26, 2019

Hon. Cathy Ann Bencivengo
United States District Judge